Anderson, J.,
delivered the opinion of the court.
This suit was instituted by a summons against James Allen and others, the plaintiffs in error, to answer the complaint of D’Arcy Paul and others, who are described “ trustees of the ‘ Methodist Episcopal Church South,’ *341 in Petersburg, Virginia;” that the said defendants are in possession, and unlawfully withhold from the plaintiffs a certain lot or parcel of land, with three brick tenements thereon, commonly called “the Union-street Methodist church,” situate in Petersburg, &c. There was a verdict for the plaintiffs, “ that the defendants unlawfully detain from the plaintiffs the whole of the premises described in the within writ;” which the defendants moved the court to set aside, upon the ground that it was contrary to law and the evidence. The court overruled the motion, and gave judgment for the plaintiffs. To which ruling of the court the defendants excepted; and the facts proved are certified by the court. The defendants also excepted, in the progress of the trial, to two other rulings of the court. The first was to the opinion of the court admitting certain deeds in evidence; and the second, to the giving certain instructions to the jury, on motion of the plaintiffs; and refusing to give the instructions moved by the defendants.
From the view which the court has taken of this cause, the question raised by the first bill of exceptions is wholly immaterial, and not necessary, therefore, to be considered or decided.
The hypothesis of all the instructions moved by the plaintiffs, and given by the court, is, that if the jury believe, from the evidence, that the defendants, or those under whom they claim, were put in possession of the premises by the plaintiffs, or their predecessors, and that the former, as tenants, acknowledged the title of the latter, as their landlords; upon this hypothesis, three propositions are deduced: First — That the possession of the former, is the possession of the latter, until the former, as such tenants, by some act, disclaim to hold of the latter, as their landlords, and full notice therof be given to the latter.
*342 Secondly. That in such case the defendants will not be permitted to set up any right or title adverse to the plaintiffs, unless they prove that they disclaimed to hold of them, or bona fide abandoned possession of the premises, or asserted and claimed an adverse right to the premises, with notice thereof to the plaintiffs, or their predecessors, three years before the institution of this suit.
And, thirdly: If the said defendants have, within three years before the institution of this suit, set their landlords at defiance, and done any act disclaiming to hold of them as tenants, or claimed to hold the premises in fee, then no notice to quit is necessary, and the defendants are liable to be proceeded against in this form of action immediately.
The doctrine of these instructions is, that the possession of the tenants is the possession of his landlord, and not adverse to it; and that a tenant will not be allowed to deny his landlord’s title. Thus far the instruction is in accordance with well established law. If it was conceding too much to say that the tenant might turn his possession to an adversary possession by disclaiming his landlord's title, and claiming to hold in fee, it was not error to the prejudice of the defendants; and it was surely not error against them to say, that unless that disclaimer was made three years before the institution of this proceeding it could be no bar to the plaintiff’s recovery; and that, when the tenant had set his landlord’s title at defiance, and claimed to hold adversely to him, no notice to quit was necessary; and he might be proceeded against in this form of action immediately.
The court is also of opinion that the first instruction propounded by the defendants was properly rejected by the court. There can be no doubt that this action could *343 be maintained by the plaintiffs against the defendants, who claimed to be the trustees of the African Methodist Episcopal Zion church in Petersburg, and to be invested with the title to any property belonging to said church, and as such to be in possession of the property in controversy. And it was competent for the plaintiffs to institute this proceeding in their names, for the recovery of the possession, against the defendants, who claim to be the successors of the trustees of said church, who held as tenants of the plaintiffs, and through whom, and not adversely to whom, they acquired possession; the said first set of" trustees having resigned and these being appointed to succeed them. And it is immaterial whether the plaintiffs acquired any personal ownership to the property in controversy by the conveyances referred to, it not being competent for the defendants, who claim to hold as the successors of their tenants, to deny the plaintiff’s title. It would he different, if they had acquired the possession under a claim of title adverse to those who held as tenants of the plaintiffs.
The court is of opinion, that the second instruction announces an abstract principle; and whether it be law or not, it is immaterial. Whether it is true or not, .“that no trustees can maintain this form of action against the Methodist Church congregation actually occupying” the church property, the plaintiffs could maintain it, as lessors, against their tenants, as trustees of the congregation, who acknowledged their title, and their successors, and it was not competent for them to denie their title.
The third instruction is a mixture of truth and error. It is true that the order of the Circuit court of November 1871, appointing the defendants trustees, was legal, and it was binding so far as it constituted them trustees. Nor could the regularity or validity of said order, or the appointment of the defendants as trustees there *344 under, be inquired of in this suit; but the said order does not -vest in them the legal title to the property in controversy “for the time being,” or for a single instant, unless the congregration which they represent are the owners of it. Only the legal title to the land owned, by the congregation is vested in them by the terms of the order, The question, whether the property in controversy is owned by the said congregation, is not touched by the order. Consequently it is not true, that by reason of said order they cannot be dispossessed of the property in controversy by this proceeding. On the contrary, -their predecessors having acknowledged the title of plaintiffs, and held under them, it is not competent for the defendants claiming through them, and as their successors, to deny the plaintiffs’ title.
The fourth instruction announces a mixed proposition of law and fact, which was immaterial to the defence, and was not controverted.
The fifth instruction is true, if it means only to assert that there was a continued and unbroken possession from their predecessors to the defendants; but such continuity of possession could not avail the defendants unless it were an adverse possession held by their predecessors, which is not asserted, and without which it is unmeaning, or an abstraction, and was properly refused.
The sixth instruction is not true, that the plaintiffs are not entitled to recover if the congregation held the property for three years before the commencement of this suit; for they may have held it through their trustees as tenants of the plaintiffs. Nothing hut an adverse holding by the congregation would bar the plaintiffs’ right of recovery.
The seventh instruction is predicated of the assumption, that the resolution referred to vests the title to the church property in controversy in the colored congrega *345 tion; which is an error. The said resolution implies that the title and ownership of the property is retained by the Methodist Episcopal Church, and the use of it only given to the colored congregation, which the owners had at any time the right to recall.
The eighth instruction is an abstraction, which is wholly immaterial. The ninth is also immaterial. It matters not whether Allen had authority or not to close the church doors; the fact is certified by the court as proved, “That from and after that time (the 20th of November 1871) the defendants have claimed to hold the premises in controversy, and the legal title thereto, adversely to the plaintiffs, and as owners of the fee simple thereof.”
The tenth instruction, as propounded, would involve the whole case of law and fact, and was properly rejected by the court.
Finally, unless the verdict was a plain deviation from the law and evidence, the appellate tribunal ought not to disturb it. But in this case the court is of opinion, upon the facts certified, that the verdict of the jury is right, and does injustice to no one. It seems that there is a division in the colored congregation. A part of them adhere to the church to which the congregation belonged when the charity was bestowed. But the majority of the congregation have withdrawn from that church, and formed a connection with another ecclesiastical body, and have put themselves under its government, have set the owners of the property at defiance, and assert it to be theirs, and have refused to allow the ministers of the old church to occupy the pulpit. This is a perversion of the original purpose of those who bestowed the charity. The question is really which section of the colored congregation shall have the use and enjoyment of the church. It would seem to be right that *346 the owners of the property and bestowers of the charity should have the decision of that question. And such is the effect of the verdict. Whilst, therefore, it is the conclusion of law, it is in harmony with the claims of jus-, tice. Upon the wrhole, the court is of opinion that there is no error in the judgment of the Hustings court. Let it be affirmed.
Judgment affirmed.